No. 100,108

In the Matter of BOYD R. MCPHERSON, *Respondent*.

(196 P.3d 921)

Opinion filed December 5, 2008.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the brief for petitioner.

*Stephen M. Joseph*, of Joseph & Hollander, P.A., of Wichita, argued the cause and was on the brief for respondent, and *Boyd R. McPherson*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Boyd R. Mc-Pherson, of Wichita, Kansas, an attorney admitted to the practice of law in Kansas. The office of the Disciplinary Administrator appears by and through Stanton A. Hazlett, Disciplinary Administrator. The respondent appears in person and by and through his attorney, Stephen M. Joseph.

The formal complaint filed against the respondent alleged a violation of Kansas Rules of Professional Conduct (KRPC) 1.3 (diligence) (2007 Kan. Ct. R. Annot. 398), KRPC 1.4 (communication) (2007 Kan. Ct. R. Annot. 413), KRPC 1.15(b) (client funds) (2007 Kan. Ct. R. Annot. 473), KRPC 1.16 (terminating representation) (2007 Kan. Ct. R. Annot. 487), KRPC 4.1(a) (false statement) (2007 Kan. Ct. R. Annot. 527), KRPC 8.1 (disciplinary matter) (2007 Kan. Ct. R. Annot. 553), and KRPC 8.4(c) (dishonesty) (2007 Kan. Ct. R. Annot. 559). A hearing was held before a panel of the Kansas Board for Discipline of Attorneys where the respondent was personally present and represented by counsel. Prior to the proceeding, the Disciplinary Administrator struck the allegations from the formal complaint of violations of KRPC 1.16, KRPC 1.4, and KRPC 8.1. Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation for discipline to this court:

## "FINDINGS OF FACT

"The Hearing Panel finds the following facts, by clear and convincing evidence:

"1.   Boyd R. McPherson (hereinafter 'the Respondent') is an attorney at law, Kansas Attorney Registration No. 15599. His last registration address with the Clerk of the Appellate Courts of Kansas is . . . Wichita, Kansas. . . . The Respondent was admitted to the practice of law in the State of Kansas on September 25, 1992.

### "DA9933

"2.   In January, 2005, David North retained the Respondent to file a motion to change custody. Mr. North resided in Omaha, Nebraska, with his second wife. Mr. North's former wife and his daughter resided in Wichita, Kansas.

"3.   On March 31, 2005, the Respondent filed the motion in Mr. North's behalf. On April 25, 2005, the Court scheduled an evidentiary hearing for August 17, 2005, ordered the parties to provide a prehearing conference order by July 26, 2005, and ordered that a settlement conference be held on August 2, 2005.

"4.   After the Court-ordered deadline, on August 3, 2005, the Respondent prepared a prehearing conference order. However, the Respondent failed to forward it to Ms. Simpson or file it with the Court.

"5.   On August 16, 2005, in preparation for the hearing the following day, the Respondent spoke by telephone with Mr. North. Thereafter, Mr. North, his wife, and a witness traveled from Omaha, Nebraska, to Wichita, Kansas, for the hearing.

"6.   Overnight, the Respondent became ill and was unable to attend Mr. North's hearing. The Respondent contacted Suzanne Dwyer, an attorney with whom he shared an office, told her that he was ill, and asked that she notify his client and the Court. Ms. Dwyer went to the courthouse and informed Mr. North that the Respondent was ill and would be unable to appear for the hearing.

"7.   At the hearing, Ms. Dwyer appeared with Mr. North. At that time, the Court dismissed the pending motion without prejudice because no prehearing order had been filed by the Respondent as previously ordered. Additionally, the Court ruled that the Respondent could file another motion, but that opposing counsel may be entitled to attorneys fees. Finally, the Court stated that the Respondent could have his first motion reinstated if he could show that he timely sent the prehearing order to Ms. Simpson.

"8.   Following the hearing, on August 17, 2006, Ms. Dwyer called the Respondent at home and informed him of the Court's orders and instructions. That same day, the Respondent prepared a letter on his home computer to Ms. Simpson. The letter provided: 'Enclosed herein please find my portion of the Prehearing Conference Order. Please provide you [sic] information as soon as possible. Sorry for the delay with this.'

"9.   Following the August 17, 2005, hearing, Mr. North contacted the Respondent on a number of occasions to obtain information regarding the status of the case. The Respondent failed to respond to many of Mr. North's requests for information.

"10. Without first making the proper showing to the Court as ordered on August 17, 2005, the Respondent filed a motion which scheduled the custody matter for November 8, 2005. On November 1, 2005, the Respondent forwarded a copy of the motion to schedule the custody matter for hearing to Ms. Simpson.

"11. On November 3, 2005, Ms. Simpson responded and informed the Respondent that she believed that he had failed to comply with the Court's August 17, 2005, order.

"12. On November 7, 2005, the Respondent wrote to Ms. Simpson. His letter provided as follows:

'I am in receipt of your letter dated November 3, 2005 regarding a hearing date in this matter. I had Jolene print out a copy of my letter to you dated August 9, 2005 transmitting to you my proposed Prehearing Order regarding this matter. This is the correspondence you advised Judge Yost you never received. A copy is enclosed herewith.

'It is my request that the court grant a new evidentiary hearing without the necessity of filing a new motion.'

The Respondent's November 7, 2005, letter was an attempt to mislead Ms. Simpson into believ[ing] that he had sent Ms. Simpson a copy of the Prehearing Conference Order on August 9, 2005.

"13. On November 7, 2005, Ms. Simpson informed the Respondent that she had not previously received the letter which purported to be sent on August 9, 2005.

"14. Because the Respondent had not accomplished what Mr. North had retained him to accomplish, Mr. North became frustrated. Mr. North contacted his former wife and negotiated a settlement of the issues directly. The terms of the agreement were sent to the Respondent and an order reflecting the agreement was filed with the Court on December 19, 2005.

"15. In June, 2006, Mr. North filed a complaint against the Respondent with the Disciplinary Administrator's office. David Calvert of the Wichita Ethics and Grievance Committee was assigned to investigate the complaint. When Mr. Calvert interviewed the Respondent he did not disclose that the August 9, 2005, letter was created after the fact to mislead Ms. Simpson. Later, the Respondent recontacted Mr. Calvert and admitted to making the letter after the fact to mislead Ms. Simpson and avoid paying her fees.

"16. After the disciplinary complaint was filed, the Respondent agreed to waive the outstanding fees. On August 7, 2006, the Respondent wrote to Mr. North. The letter provided as follows:

'This is to confirm the agreement you reached with Ms. Dwyer regarding the outstanding balance due and owing on your account and all other matters pertaining to my representation of you in the above captioned matter. I agree to consider your account paid in full at this time based upon your representations to Ms. Dwyer that you consider such as full satisfaction of any and all claims you may assert against me regarding my representation of you in the above captioned matter. Further, it is my understanding that

you are not requesting any further pursuits of your complaint against me. Please confirm in writing that this is our agreement.'

Mr. North responded to the Respondent's letter on September 7, 2006.

"DA10118

"17.    On April 10, 2006, Alisa B. Lehnherr retained the Respondent to file an action in divorce in her behalf. The following day, Ms. Lehnherr paid the Respondent $2,611.00 for costs and fees. The Respondent told Ms. Lehnherr that she could stop the proceedings at any time and that he would refund any unearned fees to her.

"18.    On April 11, 2006, the Respondent filed a petition in Ms. Lehnherr's behalf. On April 24, 2006, Ms. Lehnherr called the Respondent, informed him that she and her husband had reconciled, and directed him to stop the divorce proceedings. At that time, the Respondent assured Ms. Lehnherr that he would terminate the divorce proceedings and would refund the unearned fees when his billing was complete.

"19.    Thereafter, Ms. Lehnherr contacted the Respondent on numerous occasions seeking a refund of the unearned fees. The Respondent failed to return Ms. Lehnherr's telephone calls. Finally, in January, 2007, after still not receiving a refund of the unearned fees, Ms. Lehnherr filed a complaint against the Respondent with the Disciplinary Administrator.

"20.    On February 28, 2007, the Respondent issued a check to Ms. Lehnherr in the amount of $1,934.11. She received the check on March 11, 2007.

"CONCLUSIONS OF LAW

"1.    Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.3, KRPC 1.15, KRPC 4.1, and KRPC 8.4(c), as detailed below.

"2.    Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. In this case, the Respondent failed to provide diligent representation to Mr. North when he failed to timely provide the pre-hearing conference order to Ms. Simpson and the Court and when he failed to timely have Mr. North's motion heard by the Court. Because the Respondent failed to act with reasonable diligence and promptness in representing Mr. North, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"3.    KRPC 1.15 provides

'(b)    Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.'

The Respondent failed to promptly deliver the unearned fees to Ms. Lehnherr. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.15(b).

"4. KRPC 4.1(a) provides that '[i]n the course of representing a client a lawyer shall not knowingly . . . make a false statement of material fact or law to a third person.' The Respondent violated KRPC 4.1(a) when he knowingly and intentionally created the letter, dated August 9, 2005, which purported to be a cover letter sent to Ms. Simpson. The Respondent created the letter after the date indicated and did not send it to Ms. Simpson until months later, in an attempt to show that he previously promptly complied with the order of the Court. The Hearing Panel concludes that the Respondent violated KRPC 4.1(a).

"5. 'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty when he created the letter, dated August 9, 2005, which purported to be a cover letter sent to Ms. Simpson. By creating the letter, the Respondent engaged in conduct that involved dishonesty, fraud, deceit, and misrepresentation, in that, the Respondent attempted to avoid paying Ms. Simpson's fees and make it appear as though he had promptly complied with the Court's order. Because the Respondent engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated*. The Respondent violated his duty to the public and legal profession to maintain his personal integrity.

"*Mental State*. The Respondent knowingly violated his duty.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual and potential injury.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. The Respondent has been previously disciplined on three occasions. On October 31, 1997, the Kansas Supreme Court censured the Respondent for having violated MRPC 1.1, MRPC 1.2, MRPC 1.3, MRPC 1.4, MRPC 3.2, MRPC 8.1, MRPC 8.4, and Kan. Sup. Ct. R. 207. The Court did not publish the Respondent's censure in the Kansas Reports, however. Addition-

ally, on February 28, 2003, and September 8, 2006, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.4 and KRPC 1.3, respectively.

"Dishonest or Selfish Motive. The Respondent's misconduct, in writing the August 9, 2005, letter to Ms. Simpson, was motivated by dishonesty and selfishness. By creating the document and sending it to Ms. Simpson claiming it was a copy of a letter previously sent, the Respondent attempted to mislead Ms. Simpson and avoid paying her fees associated with the motion to change custody.

"Multiple Offenses. The Respondent violated KRPC 1.3, KRPC 1.15, KRPC 4.1(a), and KRPC 8.4(c). As such, the Respondent committed multiple offenses.

"Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process. When Mr. Calvert interviewed the Respondent [he] did not disclose that he created the August 9, 2005, letter after the date indicated. Later, however, the Respondent mitigated this misconduct by fully disclosing the misconduct to Mr. Calvert. Further, the Respondent fully admitted the misconduct during the formal proceedings before the Kansas Board for Discipline of Attorneys.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1992. At the time the Respondent's misconduct began, he had been practicing law for a period of 13 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"The Present and Past Attitude of the Attorney as Shown by the Respondent's Cooperation During the Hearing and the Respondent's Acknowledgment of the Transgressions. At the hearing, the Respondent fully cooperated in the disciplinary process as exhibited by his complete acknowledgment of the misconduct.

"Previous Good Character and Reputation in the Community Including any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney. The Respondent is an active and productive member of the bar in Wichita, Kansas. He enjoys the respect of his peers and clients and generally possesses a good character and reputation as evidenced by several letters received by the Hearing Panel.

"Remorse. At the hearing on the Formal Complaint, the Respondent expressed genuine remorse.

"Remoteness of Prior Offenses. The discipline imposed in 1997 is remote in time and in character to the misconduct in this case.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.' Standard 4.12.

Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.' Standard 7.2.

'Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.' Standard 8.2."

The Disciplinary Administrator recommended to the panel that the respondent be suspended for 1 year. The respondent, in turn, advocated a discipline of published censure. The hearing panel unanimously recommended a discipline of 6 months' suspension from the practice of law.

The respondent raises exceptions before this court to three of the panel's factual findings and to the panel's recommended discipline. The respondent does not take exceptions to the panel's conclusions that he violated KRPC 1.3 (2007 Kan. Ct. R. Annot. 398), KRPC 1.15 (2007 Kan. Ct. R. Annot. 473), KRPC 4.1 (2007 Kan. Ct. R. Annot. 527), and KRPC 8.4(c) (2007 Kan. Ct. R. Annot. 559). Thus, these violations are deemed admitted under Supreme Court Rule 212(c) (2007 Kan. Ct. R. Annot. 317).

## Discussion

The respondent argues that three of the findings made by the hearing panel are not supported by the record. In particular, the respondent disputes the panel's finding in paragraph 10 of the final hearing report that he filed a motion for a hearing in North's custody proceeding in violation of a prior court order. He also argues that the panel should have made a finding in paragraph 20 of the final hearing report that he did not commingle personal funds in his client trust account. Finally, the respondent asserts that the panel incorrectly found as an aggravating factor that he had engaged in deceptive practices during the course of the disciplinary investigation.

### Standard of Review

In disciplinary proceedings, this court "considers the evidence, the findings of the disciplinary panel, and the arguments of the

parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. [Citation omitted.] Any attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. [Citations omitted.]" *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003). Clear and convincing evidence is "evidence that causes the factfinder to believe that 'the truth of the facts asserted is highly probable.' " *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 (2008) (quoting *In re B.D.-Y.*, 286 Kan. 686, 697, 187 P.3d 594 [2008]).

This court gives the final hearing report in a disciplinary case the same level of deference as it would a special verdict by a jury or the findings of a district court during a bench trial. *Lober*, 276 Kan. at 636. When the panel's findings relate to matters about which there was conflicting testimony, this court recognizes that the panel, as the trier of fact, had the opportunity to observe the witnesses and evaluate their demeanor. The court therefore does not reweigh the evidence or pass on credibility of witnesses. *In re Rumsey*, 276 Kan. 65, 76, 71 P.3d 1150 (2003). Rather, this court will generally affirm the panel's findings if it determines that a rational factfinder could have found that it was highly probable that the respondent engaged in the activity described in the hearing report. See *Dennis*, 286 Kan. at 725.

*Analysis*

Paragraph 10 of the final hearing report provides:

"Without first making the proper showing to the Court as ordered on August 17, 2005, the Respondent filed a motion which scheduled the custody matter [in the North case] for November 8, 2005. On November 1, 2005, the Respondent forwarded a copy of the motion to schedule the custody matter for hearing to Ms. Simpson."

The respondent takes exception to this finding, arguing in his brief that "[r]escheduling the earlier motion regarding residential placement without the district court's permission would have been a violation of the court's August 17 order," but "[a]sking the court to reschedule the hearing was not a violation of the order." The respondent explains that he is taking exception to this finding "to

avoid a mistaken impression by the Supreme Court that [he] also violated the district court's August 17 order."

David North's custody case was originally set for an evidentiary hearing on August 17, 2005. The respondent did not show up on the date of the hearing, however, because he was ill. When the respondent did not show at the August 17, 2005 hearing, the court dismissed the pending custody motion without prejudice because the respondent had failed to provide a pretrial order. The court indicated that the respondent could file another motion, but Ms. Simpson (the opposing counsel in the case) might be entitled to attorney fees. The court also indicated that the respondent's original motion for an evidentiary hearing might be reinstated if the respondent could show that he had sent Simpson the pretrial order before the August 17 hearing. The respondent does not dispute these facts.

On November 1, 2005, the respondent filed a motion with the court "to schedule [the custody] matter for Evidentiary Hearing." Attached to this motion was a notice of hearing, which stated that the "foregoing Motion will be heard on the 8th day of November, 2005 at 9:30 a.m. in the Family Law Department of the Sedgwick County Courthouse." Prior to filing the November 1 motion, the respondent had not demonstrated to the court that he had sent the pretrial order to Simpson.

The record demonstrates that the district court issued an order on August 17, 2005, stating that an evidentiary hearing would not be reinstated until the respondent demonstrated to the court that he had sent the pretrial order to Simpson. On November 1, 2005, the respondent sent a notice of evidentiary hearing on the custody matter without ever complying with the court's precondition. The respondent admitted these facts in his answer to the disciplinary complaint. The respondent's contention that paragraph 10 is not supported by clear and convincing evidence is without merit.

Paragraph 20 of the final hearing report provides: "On February 28, 2007, the Respondent issued a check to Ms. Lehnherr in the amount of $1,934.11. She received the check on March 11, 2007."

The respondent argues paragraph 20 should be supplemented with a finding that he did not comingle personal funds with Lehn-

herr's funds in his client trust account or misuse those funds in any way. The respondent claimed that the balance of Lehnherr's retainer always remained in the respondent's trust account until he returned it to her.

The Disciplinary Administrator points out that there was never any allegation made that the respondent comingled or misused Lehnherr's funds. The cause for Lehnherr's complaint—and the resultant finding by the panel—was the respondent's 10-month delay in returning the balance of her retainer when she notified him that she was terminating his representation. Because the respondent was never charged with having misused Lehnherr's funds, there is no need to supplement the panel's factual findings with additional findings irrelevant to the allegations of the formal complaint.

Finally, the respondent takes issue with the panel's finding as an aggravating factor that he engaged in deceptive practices during the disciplinary process.

The respondent's deception was based on the panel's conclusion that when he was initially interviewed by David Calvert, who was investigating the allegations of misconduct relating to the respondent's representation of North, he did not disclose that he had created the August 9 letter he allegedly sent to Simpson (which purportedly was accompanied by the pretrial order) until months after the fact to avoid paying Simpson's attorney fees.

As background, the respondent sent Simpson a letter on November 7, 2005, regarding North's custody dispute to which the respondent attached a letter he allegedly sent to Simpson on August 9. Simpson responded with a letter that same day stating that she never received the original August 9 letter and that the copy of that letter sent to her on November 7 was not on letterhead and was not signed. She also indicated that the pretrial conference order provided on November 7 was incomplete in that it did not include a statement of the anticipated testimony of any of the witnesses. The respondent now acknowledges that he created the purported August 9 letter after the fact in order to avoid paying Simpson's attorney fees under the district court's August 17 order and

in an attempt to have the district court reschedule the evidentiary hearing without having to restart the custody process.

In the respondent's initial letter to Calvert explaining his representation of North, he made no mention of the fact that he had fabricated the August 9 letter months after the fact. Similarly, in his initial interview with Calvert, he did not mention that he drafted this letter well after it was dated despite Calvert's reading of a letter from Simpson indicating that she had concerns about the August 9 letter. In the disciplinary hearing, the respondent claimed that he "really didn't make any comment about [the letter]" to Calvert at that time, "but [he] didn't tell [Calvert] that [it] was a fictitious letter." The respondent admitted to the hearing panel that he was not candid with Calvert during the interview regarding the letter.

The hearing panel found the respondent's failure to communicate honestly with Calvert to be an aggravating factor in this case. The panel also found as a mitigating factor that the respondent subsequently cooperated with the disciplinary process and completely acknowledged his misconduct.

The panel's finding that the respondent was not forthright at all times during the disciplinary process is supported by the record and is balanced by its finding regarding the respondent's subsequent cooperation. We conclude that there is clear and convincing evidence to support the panel's finding that the respondent did engage in deceptive behavior at the outset of the investigation.

Discipline

The respondent argues that the panel's recommended discipline—6 months' suspension—is inappropriate. Instead, the respondent asserts that the proper sanction is published censure. The Disciplinary Administrator recommended to the panel that a 1-year suspension from practice be imposed. Before this court, the Disciplinary Administrator modified his recommendation and now requests that this court impose a 6-month suspension.

*Standard of Review*

Although this court generally gives some deference to the hearing panel's findings of fact and conclusions of law, see *In re Lober,*

276 Kan. at 636, a panel's recommendation as to the appropriate discipline is advisory only and shall not prevent the court from imposing discipline greater or lesser than that recommended by the panel or the Disciplinary Administrator. Rule 212(f) (2007 Kan. Ct. R. Annot. 317); see *In re Pittman*, 285 Kan. 1133, 1141, 179 P.3d 404 (2008).

*Analysis*

The panel based its recommendation of 6 months' suspension on Standards 4.12, 7.2, and 8.2 of the American Bar Association's Standards for Imposing Lawyer Sanctions (ABA Standards). The respondent argues that these Standards were inappropriate given the panel's findings regarding the respondent's conduct, and a correct reading of the Standards reveals that the respondent should receive a published censure.

*Standard 4.12*

The panel found that the respondent failed to return Lehnherr's retainer from her divorce case until 10 months after she had notified him in April 2006 that she and her husband had reconciled and they were no longer going through with the divorce. The respondent assured Lehnherr in April that he would refund the unused portion of the retainer. Despite this assurance, the respondent did not return Lehnherr's numerous phone calls about the retainer. It was not until February 2007—a month after Lehnherr filed a disciplinary complaint against the respondent—that he returned the funds.

ABA Standard 4.12 states that suspension is "generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." The respondent argues that this standard is inappropriate because nothing in the record demonstrates that he *knowingly* delayed the reimbursement of Lehnherr's money. Instead, he argues that ABA Standard 4.13, which refers to an attorney's negligence, applies. The respondent bases this claim on his testimony at the disciplinary hearing that he did not promptly return Lehnherr's funds from her divorce retainer for 10 months due to "[v]ery poor management."

Contrary to the respondent's assertions, the record demonstrates that the respondent personally spoke with Lehnherr in April 2006 and indicated that he would remit the unused portion of her retainer as soon as his billing was finished. Even if the respondent did not know, as he claimed at the hearing, of Lehnherr's repeated attempts to contact him between April 2006 and January 2007, he nevertheless was aware that he was no longer representing her in the divorce case.

*Standard 7.2*

The panel also found that ABA Standard 7.2 called for suspension in this case. Standard 7.2 states that "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty as a professional and causes injury or potential injury to a client, the public, or the legal system."

The respondent argues that according to the index for the ABA Standards, a violation of KRPC 4.1(a) is controlled by the considerations in either Standard 5.1 (failure to maintain personal integrity) or 6.1 (false statements, fraud, misrepresentation), not Standard 7 (violations of duties owed as a professional). In particular, the respondent argues that ABA Standard 5.13 is appropriate in this case:

"Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law."

The ABA Standards provide that Standards set forth in section 5.1 are appropriate unless there are aggravating or mitigating circumstances. As the Disciplinary Administrator points out in the brief in this case, the respondent knowingly drafted the August 9 letter to opposing counsel in the North custody dispute in November in order to avoid paying opposing counsel's attorney fees in violation of a prior court order. Moreover, during oral argument before this court, the respondent indicated that his primary motivation for generating the fraudulent letter was to reschedule the evidentiary hearing without having to restart the entire custody process over again. In other words, although the letter itself was not sent to the district court or filed with that court, the respon-

dent's ultimate goal in drafting the letter was to convince the court that he had complied with its previous order when he actually had not done so. These circumstances demonstrate that the respondent's conduct is more egregious than that discussed in Standard 5.13.

The more appropriate standard, in our view, is Standard 6.12, which states:

"Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding."

The respondent in this case generated a false letter to opposing counsel with the dual goal of avoiding sanctions and of convincing the court to reschedule the evidentiary hearing. The respondent knew that the August 9 letter would eventually be submitted to the court and hoped that the court would rely on that letter to reopen the case. Such conduct is much more grievous than the respondent acknowledges in his brief and argument before this court.

*Standard 8.2*

The panel additionally relied on ABA Standard 8.2, which states that "[s]uspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession."

The respondent received an unpublished censure in 1997 based on his mishandling of a criminal appeal to which he was appointed (that appeal was subsequently dismissed because the respondent failed to prosecute the appeal); an informal admonition in 2003 due to his failure to prosecute an appeal for a client's family law case; and another informal admonition in 2006 for lack of diligence for failing to file an order in a domestic case he was handling. The Disciplinary Administrator correctly points out that all of these cases involve a lack of diligence.

In this case, the panel found that the respondent failed to exercise diligence in his representation of North when he failed to

timely file the pretrial order and this failure prevented the court from hearing North's motion. Even if the respondent's statement in his brief before this court is true that this lack of diligence is the "least significant of the conclusions of misconduct against" him, it nevertheless exhibits a pattern of misconduct that the respondent has not remedied—despite successive citations by the Disciplinary Administrator.

*Appropriate Discipline*

The two complaints filed against the respondent in this case resulted from the respondent's failure to prosecute North's custody case, from the respondent's fabrication of the August 9 letter to opposing counsel in North's case to avoid paying attorney fees and to persuade the court to reopen the case and hold an evidentiary hearing, and from the respondent's 10-month delay in reimbursing the balance of Lehnherr's funds. The respondent has been disciplined for lack of diligent representation in the past. Moreover, the respondent's after-the-fact creation of the August 9 letter was particularly repugnant in that it was not only dishonest, but was created to avoid personal sanction and to circumvent court orders.

The combination of these actions calls into serious question the respondent's fitness to practice law. Based upon our consideration of the entire record and the statements of counsel and the respondent before this court, we are convinced that the recommended discipline by the panel is the appropriate discipline in this case. Counsel for the respondent requests that this court delay imposition of the suspension so that the respondent's firm, of which his counsel Joseph is a member, may find other attorneys to represent ongoing clients of the respondent. We have considered this request and deem it inappropriate to delay the discipline imposed against the respondent. We are not unmindful of the clients whom the respondent represents, but we are convinced that members of the firm continuing in the active practice will adequately provide for their interest.

We conclude that the findings of the hearing panel are supported by clear and convincing evidence, and we adopt the hearing panel's findings of fact and conclusions of law. We also conclude

that the panel has fully considered all factors in relation to the appropriate discipline in this case, and we adopt its recommendation for discipline that the respondent be suspended from the practice of law for a period of 6 months.

IT IS THEREFORE ORDERED that respondent, Boyd R. McPherson, be and he is hereby suspended from the practice of law in the state of Kansas for a period of 6 months, effective on the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2007 Kan. Ct. R. Annot. 261).

IT IS FURTHER ORDERED that the respondent comply with Supreme Court Rule 218 (2007 Kan. Ct. R. Annot. 337) and that the respondent shall not engage in the practice of law until such time as the respondent is reinstated pursuant to Supreme Court Rule 219 (2008 Kan. Ct. R. Annot. 365).

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs herein be assessed to respondent.

LUCKERT, J., not participating.

MICHAEL CORRIGAN, District Judge, assigned.