IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 126,012

In the Matter of MARK A. ROY,
*Respondent.*

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Oral argument held September 15, 2023. Opinion filed February 2, 2024. Twelve-month suspension, stayed pending successful completion of twelve-month period of probation.

*Alice L. Walker,* Deputy Disciplinary Administrator, argued the cause, and *Gayle B. Larkin*, Disciplinary Administrator, was with her on the brief for the petitioner.

*Christopher M. McHugh*, of Joseph, Hollander & Craft, LLC, of Kansas City, Missouri, argued the cause, and *Diane L. Bellquist*, of the same firm, of Topeka, was on the briefs for respondent, and *Mark. A. Roy*, respondent, argued the cause pro se.

PER CURIAM: This is an attorney discipline proceeding against Mark A. Roy, of Kansas City, Missouri, who was admitted to practice law in Kansas in April 1991.

On August 19, 2022, the Disciplinary Administrator's office filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). On August 29, 2022, Diane L. Bellquist entered her appearance on behalf of Roy, and that same day filed a motion to continue the formal hearing. The panel granted Roy's motion to continue formal hearing and rescheduled the hearing for November 29, 2022. The respondent filed an answer to the formal complaint on September 9, 2022. In his answer, Roy admitted many of the factual allegations in the

formal complaint. On September 19, 2022, the hearing panel held a prehearing conference by Zoom. The Disciplinary Administrator's office appeared by video through Alice Walker, and Roy appeared in person and through counsel by video. Roy filed a proposed probation plan on November 15, 2022. On November 18, 2022, the parties entered into written stipulations. A panel of the Kansas Board for Discipline of Attorneys held a hearing on November 29, 2022. The respondent appeared with counsel, Diane L. Bellquist. At the end of the hearing, the panel determined that the respondent violated KRPC 1.15(d)(2)(v) (2023 Kan. S. Ct. R. at 373) (safekeeping property). The panel also acknowledged that Roy entered into stipulations with the Disciplinary Administrator's office where he admitted the facts alleged in the formal complaint, and admitted he violated KRPC 1.1 (2023 Kan. S. Ct. R. at 327) (competence), 1.15 (safekeeping property), 1.3 (2023 Kan. S. Ct. R. at 331) (diligence), 1.5 (2023 Kan. S. Ct. R. at 333) (fees), and 8.4(g) (2023 Kan. S. Ct. R. at 433) (misconduct). The panel set forth its findings of fact and conclusions of law, along with its recommendation on disposition, in a final hearing report, the relevant portions of which are set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

The relevant portions of the summary submission agreement follow.

"*Findings of Fact*

. . . .

"14.    The hearing panel finds the following facts, by clear and convincing evidence:

"15.    The respondent met F.K. in 2016. At that time, in addition to being a licensed attorney, the respondent was a licensed real estate broker.

"16.     F.K. had recently married and F.K.'s spouse owned a house that was purchased prior to the marriage. F.K. asked the respondent to evaluate the house for a possible sale.

"17.     The respondent evaluated the house and discussed with F.K. and F.K.'s wife what would need to be fixed in order to sell the house.

"18.     F.K.'s spouse also had children from a prior relationship. After discussing the house evaluation, F.K. asked the respondent if the respondent handled adoptions in his law practice. F.K. wished to adopt his wife's children.

"19.     The respondent's primary areas of practice up to that point had been bankruptcy law and real estate law. The respondent had no prior experience with adoption proceedings but wanted to help F.K. due to F.K.'s former social relationship with the respondent's father. The respondent agreed to represent F.K. to complete the adoptions.

"20.     "F.K. paid the respondent a $2,000.00 flat fee and $200.00 for filing expenses to handle the adoptions. The respondent and F.K. had no written fee agreement.

"21.     F.K. understood that in return for his $2,200.00 payment the respondent agreed to complete the adoptions.

"22.     During his testimony, the respondent agreed that the $2,000.00 F.K. paid was a flat fee paid to the respondent to complete the adoption by F.K. of his spouse's children. While the flat fee agreement was not reduced to writing, the respondent acknowledged that the fee would not have been earned until the adoption matters concluded.

"23.     The respondent testified that he believed he placed these funds from F.K. into his attorney trust account but he could not recall whether he actually did so.

3

"24.     During the disciplinary investigation in this matter, the respondent was unable to produce requested trust account records or documentation showing he deposited F.K.'s fee into his trust account. The respondent was unable to identify what he did with the fee after he received it.

"25.     Disciplinary investigator Thomas Mitchelson asked the respondent during a phone call on October 4, 2021, about the fee and also asked the respondent to produce a copy of his trust account records. The respondent told Investigator Mitchelson he was not sure he could produce his trust account records. Ultimately, the respondent did not produce his trust account records.

"26.     The respondent did not keep time logs or communication logs regarding his work on F.K.'s adoption matter.

"27.     On January 24, 2017, the respondent filed a petition for adoption in Johnson County District Court listing all three children on the same petition. The petition was rejected by the Court, which requires each adoptee to have their own case number and separate petitions.

"28.     After the initial petition was rejected, the respondent filed three separate adoption petitions, one for each child, that same day.

"29.     K.S.A. 59-2133(a) provides:  'Upon filing the petition, the court shall fix the time and place for the hearing. The time fixed for the hearing may be any time not more than 60 days from the date the petition is filed.'

"30.     Tenth Judicial District Court Rules, Rule 1, KS. R. 10 Dist. Probate Rule 1 (Johnson County District Court local rules) states:

'It shall be the duty of the filing attorney (or pro se petitioner) to obtain, at the time of the filing of the petition, a hearing date for the hearing of the petition filed, and to provide an "Order of Hearing" presented to the Court for execution

4

and filing, unless all appropriate documentation, including the entries of appearance, consents and waivers, are filed with the petition.'

"31.    KS. R. 10 Dist. Probate Rule 1 further states: 'Commencement of any action requires both the filing of the petition and the obtaining of an "Order for Hearing" (or equivalent). Just filing the petition will not result in the matter being scheduled for hearing and may result in substantial prejudice to the petitioning party.'

"32.    The local rule further states that 'cases shall be scheduled for hearing by contacting the Court's Administrative Assistant ("AA") to obtain calendar setting.'

"33.    On January 24, 2017, the respondent emailed F.K. regarding the three filed adoption petitions and stated, 'I assume the Court will set some type of hearing date on the petitions.'

"34.    On February 14, 2017, the respondent emailed F.K. and indicated that he was 'expecting a hearing date at some point and will call the Court to figure out that part.'

"35.    On March 8, 2017, the respondent emailed F.K. stating:  'I just checked the Johnson County website and no Court date has been set on the 3 petitions. I will let you know something the minute the Court lets me know something.'

"36.    The respondent said that he spent some time learning rules relating to adoptions, such as how to file the case, filing fees, and work to be done to accomplish the adoptions. However, in his research, he did not find the local rule requiring scheduling a hearing on each adoption petition within 60 days. The respondent acknowledged that he made no efforts to connect with or learn from any attorneys experienced in this area of the law.

"37.    The respondent testified that after the adoption petitions were filed, F.K. indicated that one of the children no longer consented to being adopted. The respondent said this created uncertainty for him whether the adoptions were to move forward.

"38.     In his response to the initial complaint received by the disciplinary administrator's office, the respondent stated that, '[t]his accounts for why I did not pursue those actions further.' The respondent also stated, '[t]his partially accounts, but does not excuse, delays and inactions on prosecution of this matter on my part.'

"39.     After filing the adoption petitions, the respondent took no further action in the adoption matters. The respondent sent an email to F.K. indicating that the respondent assumed the district court would set the matters for hearing.

"40.     The Johnson County District Court register of actions in the adoption proceedings shows no reference to the filing of an order for hearing.

"41.     On March 14, 2018, the Johnson County District Court dismissed the three adoption petitions citing failure to set a hearing pursuant to K.S.A. 59-2133(a).

"42.     No communication occurred between the respondent and F.K. from March 2017, until F.K. contacted the respondent requesting a refund in March 2021.

"43.     In March 2021, F.K. hired new counsel, Rachel Reiber, to complete two of the adoptions. The adoptions were completed in June 2021.

"44.     When Ms. Reiber reviewed the information from the respondent's representation of F.K., Ms. Reiber noted that the respondent's original petitions did not have proof of service on the biological fathers as required by K.S.A. 59-2136(f).

"45.     K.S.A. 59-2136(f) requires:

'Notice of the proceeding shall be given to every person identified as the father or a possible father by personal service, certified mail return receipt requested or in any other manner the court may direct. Notice shall be given at least 10 calendar days before the hearing, unless waived by the person entitled to notice. Proof of notice or waiver of notice shall be filed with the court before the petition or request is heard.'

"46.     The respondent refunded $2,200.00 to F.K. in September 2022 via a cashier's check. The respondent testified that the cashier's check was funded by money from the respondent's own personal bank account.

"47.     The respondent testified that while he intended to help F.K. by agreeing to handle the adoption matters, the respondent should not have agreed to handle the adoptions. In his response to the disciplinary administrator, the respondent admitted that he should have referred F.K.'s matter to an adoption attorney.

"*Conclusions of Law*

"48.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1 (competence), 1.3 (diligence), 1.5 (fees), 1.15 (safekeeping property), and 8.4(g) (misconduct), as detailed below.

"KRPC 1.1

"49.     Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.'

"50.     The respondent was not competent to represent F.K. in the adoption matters at issue here. Having no experience in that area of law, and having failed to engage in proper research, training, or consultation, the respondent was unable to competently handle the adoption matters.

"51.     The respondent stipulated that he violated KRPC 1.1.

"52.     Accordingly, the hearing panel concludes that the respondent violated KRPC 1.1.

7

"53.    Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3.

"54.    The respondent failed to diligently and promptly represent F.K. in the adoption matters.

"55.    The respondent failed to timely contact the Johnson County District Court to set the adoption matters for hearing after the petitions were filed on January 24, 2017.

"56.    After March 14, 2018, when the adoption petitions were dismissed for failure to set a hearing pursuant to K.S.A. 59-2133(a), the respondent took no further action on the matters.

"57.    The respondent failed to inform F.K. that the adoption petitions had been dismissed.

"58.    The respondent stipulated that he violated KRPC 1.3.

"59.    Because the respondent failed to act with reasonable diligence and promptness in representing F.K., the hearing panel concludes that the respondent violated KRPC 1.3.

"KRPC 1.5(b)

"60.    KRPC 1.5(b) provides that, '[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.'

"61.     "The respondent did not adequately communicate to F.K. the basis for payment for the adoption matters. The respondent asked F.K. for $2,000.00 plus $200.00 for filing expenses, which F.K. paid. F.K. assumed that the $2,000.00 was a flat fee for the respondent to complete the adoption matters. The evidence showed that the respondent did not properly communicate the basis for the $2,000.00 fee to F.K.

"62.     The respondent stipulated that he violated KRPC 1.5.

"63.     Accordingly, the hearing panel concludes that the respondent violated KRPC 1.5(b).

"KRPC 1.15(a)

"64.     Lawyers must properly safeguard their clients' property. KRPC 1.15(a) specifically provides that:

'(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.'

"65.     Properly safeguarding the property of others necessarily requires lawyers to deposit unearned fees into an attorney trust account. Such fees must remain in the attorney trust account until they are earned by the lawyer or properly refunded to the payor.

"66.     In this case, the respondent failed to properly safeguard F.K.'s funds.

9

"67.    The respondent acknowledged that the cashier's check used to refund F.K. the $2,200 payment in September 2022 was funded using the respondent's own money from his personal bank account.

"68.    The $2,000 F.K. paid was a flat fee paid to the respondent to complete the adoption by F.K. of his spouse's children. While the flat fee agreement was not reduced to writing, the respondent acknowledged that the fee would not have been earned until the adoption matters concluded.

"69.    The refund of F.K.'s flat fee with money from the respondent's personal account and the fact that the respondent did not handle the adoption matters to completion establish that the respondent did not properly safeguard F.K.'s funds in the respondent's attorney trust account.

"70.    The respondent stipulated that he violated KRPC 1.15.

"71.    Accordingly, the hearing panel concludes that the respondent failed to properly safeguard F.K.'s property, in violation of KRPC 1.15(a).

"KRPC 1.15(b)

"72.    Lawyers must deal properly with the property of their clients. Specifically, KRPC 1.15(b) provides:

'(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.'

10

"73. F.K. sought a partial refund of the fees paid from the respondent in March 2021. The respondent did not provide a refund to F.K. until September 2022.

"74. When F.K. requested the refund, the respondent had engaged in no work in the adoption matter since early 2017. The adoption petitions were dismissed in March 2018. The respondent failed to provide F.K. a refund until more than four years after the petitions were dismissed.

"75. The respondent violated KRPC 1.15(b) when he failed to promptly deliver F.K.'s unearned fees to F.K.

"76. The respondent stipulated that he violated KRPC 1.15.

"77. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.15(b).

"KRPC 1.15(d)(2)(v)

"78. KRPC 1.15(d)(2)(v) provides that '[t]he lawyer shall: . . . [p]roduce all trust account records for examination by the Disciplinary Administrator upon request of the Disciplinary Administrator.' Further, lawyers must preserve complete records of trust account funds 'for a period of five years after termination of the representation.' KRPC 1.15(a).

"79. The respondent did not produce trust account records related to his representation of F.K., which began sometime in late 2016 or early 2017, when Disciplinary Investigator Tom Mitchelson requested them in October 2021.

"80. The respondent stipulated that he violated KRPC 1.15.

"81. The respondent failed to produce his attorney trust account records as requested by the Disciplinary Administrator. Therefore, the hearing panel concludes that the respondent violated KRPC 1.15(d)(2)(v).

11

"82.     'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g).

"83.     The respondent engaged in conduct that adversely reflects on his fitness to practice law when he agreed to represent F.K. in the adoption matters without prior experience in this area of the law and without ensuring he became competent to represent F.K., failed to set a hearing on the adoption petitions, failed to take any action or notify F.K. when the adoption petitions were dismissed, charged an unreasonable fee, failed to properly safeguard F.K.'s funds, failed to promptly deliver F.K.'s funds, and failed to produce proper trust account records upon request of the disciplinary administrator.

"84.     The respondent stipulated that he violated KRPC 8.4(g).

"85.     Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(g).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"86.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"87.     *Duty Violated*. The respondent violated his duty to his client and to the legal profession.

12

"88.    *Mental State*. The respondent knowingly violated his duty to keep his client's property safe. The respondent's remaining misconduct was committed, at least initially, negligently. Some of this remaining misconduct was sustained to the point where the respondent knew or should have known that he was committing the misconduct.

"89.    *Injury*. As a result of the respondent's misconduct, the respondent caused injury to F.K. by depriving F.K. of the $2,000.00 fee paid to the respondent by F.K. for more than four years and by causing unreasonable delay in the adoption matters.

"Aggravating and Mitigating Factors

"90.    Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, considered the following aggravating factors:

"91.    *Prior Disciplinary Offenses*. The respondent has been previously disciplined on one prior occasion. The respondent received a public censure in 1997 for misconduct that involved forging his client's signature on and then filing a bankruptcy petition against his client's wishes, resulting in findings that he violated (precursor to the KRPC) Model Rules of Professional Conduct 1.1 (competence), 1.2 (scope of representation), 1.3 (diligence), 1.4 (client communication), 1.5 (fees), 1.16 (terminating representation), 3.1 (meritorious claims), 3.3 (candor toward the tribunal), and 8.4 (misconduct).

"92.    *Substantial Experience in the Practice of Law*.  The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas on April 26, 1991. At the time of the misconduct, the respondent had been practicing law for more than 26 years. The hearing panel concludes that at the time of his misconduct the respondent had substantial experience in the practice of law.

13

"93.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, considered the following mitigating factors:

"94.     *Absence of a Dishonest or Selfish Motive*. The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"95.     *Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct*. The respondent argued that the evidence supports consideration of this mitigating factor. While the respondent did eventually provide F.K. with a $2,200.00 refund, this did not occur until September 2022, almost 18 months after F.K. requested a refund in March 2021 and more than four years after the adoption petitions the respondent filed on F.K.'s behalf were dismissed. Therefore, the hearing panel concludes that this mitigating factor does not apply here.

"96.     *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The hearing panel acknowledges the testimony of investigator Tom Mitchelson that the respondent did not produce trust account records to Mr. Mitchelson when requested during the disciplinary investigation, which contributed to the hearing panel's finding that the respondent violated KRPC 1.15(d)(2)(v). However, the hearing panel also acknowledges that the respondent entered into stipulations with the disciplinary administrator's office where he admitted the facts alleged in the formal complaint and admitted that he violated KRPC 1.1 (competence), 1.3 (diligence), 1.5 (fees), 1.15 (safekeeping property), and 8.4(g) (misconduct). The hearing panel concludes that over the course of the disciplinary matter, the respondent engaged in conduct that was both cooperative and noncooperative. However, the respondent's conduct overall was more cooperative than noncooperative, so the hearing panel considered the respondent's conduct to be mitigating.

"97.     *Delay in Disciplinary Proceedings.* The respondent argued that delay in the disciplinary proceedings is a mitigating factor in this case. However, the initial

14

complaint in this matter was received by the disciplinary administrator's office July 20, 2021, an investigation was subsequently completed, and the formal hearing was held November 29, 2022. This is not an inordinate amount of delay. The fact that the formal hearing occurred approximately 4 to 5 years after the misconduct occurred can be attributed in part to the fact that the respondent did not self-report his misconduct as he is obligated to do under Supreme Court Rule 210 (2022 Kan. S. Ct. R. at 263) (Duty to Assist; Duty to Respond; Duty to Report). The fact that the respondent's misconduct was not discovered by the complainant—F.K.'s new counsel hired in 2021—or the disciplinary administrator's office until 2021, when the respondent has a duty to self-report misconduct under Supreme Court Rule 210, is not considered a mitigating factor by the hearing panel under these circumstances.

"98.    *Remorse*. The respondent stipulated that his conduct violated the rules of professional conduct and has since taken action to change his practices to prevent similar problems in the future. The hearing panel concludes that the respondent showed that he is remorseful that he committed the misconduct.

"99.    *Remoteness of Prior Offenses.* The misconduct which gave rise to the respondent's 1997 published censure is remote in time from the misconduct in this case.

"100.    In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.12    Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

'4.13    Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.

'4.42    Suspension is generally appropriate when:

15

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect [and] causes injury or potential injury to a client.

'4.43    Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client and causes injury or potential injury to a client.

'4.52    Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client.

'4.53    Reprimand is generally appropriate when a lawyer:

(a) demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client; or

(b) is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury to a client.

"*Recommendation of the Parties*

"101.    The disciplinary administrator recommended that the respondent be suspended for a period of 12 months with the requirement that the respondent undergo a reinstatement hearing pursuant to Supreme Court Rule 232 (2022 Kan. S. Ct. R. at 293).

"102.    The respondent recommended that he receive a published censure, or, alternatively, be suspended for an unspecified period of time that is stayed while the respondent is placed on probation according to the terms of his proposed probation plan.

16

"103.    When a respondent requests probation, the hearing panel is required to consider Rule 227, which provides:

'(d)    Restrictions on Recommendation of Probation. A hearing panel may not recommend that the respondent be placed on probation unless the following requirements are met:

(1) the respondent complies with subsections (a) and (c) and the proposed probation plan satisfies the requirements in subsection (b);

(2) the misconduct can be corrected by probation; and

(3) placing the respondent on probation is in the best interests of the legal profession and the public.

"104.    Rule 227(c) requires that the respondent 'establish that the respondent has been complying with each condition in the probation plan for at least 14 days prior to the hearing.'

"105.    The hearing panel concludes based on the evidence that the respondent has limited the scope of his law practice, as required by the proposed probation plan.

"106.    Moreover, some of the requirements of the probation plan could not have feasibly been met between the time the proposed plan was filed and the formal hearing date, such as preparation of monthly and quarterly reports.

"107.    However, a central part of the respondent's proposed probation plan is supervision of his law practice by attorney David B. Anderson, Jr. The respondent's plan proposed an initial in-person meeting between Mr. Anderson and the respondent to review the respondent's cases and law office management and to 'assess processes with

specific regard to diligence, client communication, payment of client fees, and handling of trust funds.'

"108.   The respondent testified that he first discussed this proposed probation plan with Mr. Anderson approximately one week prior to the formal hearing. The respondent met with Mr. Anderson for the first time regarding the plan the afternoon before the hearing.

"109.   The respondent had also not taken any continuing legal education courses as proposed in his probation plan prior to the formal hearing.

"110.   Further, the hearing panel is concerned that the respondent's proposed probation plan does not satisfy the requirements of Rule 227(b) because it does not address any structure or procedures the respondent plans to use to ensure he charges reasonable fees, communicates those fees appropriately, and properly safekeeps client property. It was unclear from the respondent's testimony whether he planned in the future to communicate an hourly rate to prospective clients and whether he planned to hold flat fees in his trust account until they are earned. The proposed probation plan does not address this topic at all other than to state that fees and handling of trust funds will be discussed with and reviewed by the proposed probation supervisor.

"111.   The hearing panel unanimously agrees that placing the respondent on probation, with adequate provisions, would be in the best interests of the public, the respondent, and the legal profession. However, under Rule 227(d), the hearing panel 'may not recommend that the respondent be placed on probation unless' the respondent complies with Rule 227(a) and (c) and the plan satisfies the requirements of Rule 227(b).

"112.   Because the respondent has not complied with Rule 227(c) and the proposed plan does not meet the requirements of Rule 227(b), the hearing panel is not able to recommend probation.

"113.   In reaching the recommendation for discipline below, the hearing panel considered the findings, conclusions, and discipline imposed in several cases involving

18

certain similar rule violations: *In re Lowry*, 316 Kan. 684, 520 P.3d 727 (2022) (ninety-day suspension stayed for imposition of three-year period of probation); *In re Beye*, 315 Kan. 857, 511 P.3d 963 (2022) (published censure); *In re Barker*, 299 Kan. 158, 321 P.3d 767 (2014) (six-month suspension); and *In re McPherson*, 287 Kan. 434, 196 P.3d 921 (2008) (six-month suspension).

"114.    While the *Beye* matter involved lack of diligence, failure to safekeep client funds in a trust account, and failure to refund the client's money in a timely manner, there are additional factors here that render published censure an inappropriate discipline. First, the *Beye* hearing panel concluded that Beye's conduct was done negligently, whereas here, some of the respondent's misconduct was done knowingly. *In re Beye*, 315 Kan. at 860. Further, the respondent agreed to take on a matter in an area of law that he was not competent to handle and failed to take any steps to become competent, an issue not implicated in the *Beye* case. Finally, the *Beye* matter did not involve a violation of KRPC 1.15(d)(2)(v) for failure to submit trust account records to the disciplinary administrator's office and the delay in refunding client funds here was several years longer than the delay in the *Beye* matter. *In re Beye*, 315 Kan. 857.

"*Recommendation of the Hearing Panel*

"115.    Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel recommends that the respondent be suspended for a period of 180 days. The hearing panel does not recommend that the respondent be required to undergo a reinstatement hearing pursuant to Rule 232.

"116.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator.

DISCUSSION

In a disciplinary proceeding, we consider the evidence and the parties' arguments and determine whether KRPC violations exist and, if they do, the appropriate discipline.

19

Attorney misconduct must be established by clear and convincing evidence. *In re Spiegel*, 315 Kan. 143, 147, 504 P.3d 1057 (2022); see Supreme Court Rule 226(a)(1)(A) (2023 Kan. S. Ct. R. at 281). "'Clear and convincing evidence is "evidence that causes the factfinder to believe that 'the truth of the facts asserted is highly probable.'"'" 315 Kan. at 147 (quoting *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 [2009]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer. Prior to the hearing before the disciplinary panel, respondent entered into an agreement stipulating to violations of KRPC 1.1 (competence), 1.15 (safekeeping property), 1.3 (diligence), 1.5 (fees), and 8.4(g) (misconduct). No exceptions were filed in the case, and the findings of fact and conclusions of law in the hearing panel's final report are deemed admitted. Supreme Court Rule 228(g)(1), (2) (2023 Kan. S. Ct. R. at 288).

On September 15, 2023, we heard oral arguments in this matter. The deputy disciplinary administrator provided an optimistic assessment of respondent's current fitness to practice law. She reported that he has consistently provided the Disciplinary Administrator's office with monthly updates detailing measures he and his practice supervisor have implemented that reflect compliance with his updated probation plan. In speaking to the probation plan itself, the deputy disciplinary administrator characterized the plan as one that is workable, provides protection for both the public and the legal profession, and is in the best interests of the respondent. Based on these observations, the deputy disciplinary administrator now recommends a 12-month suspension, staying the suspension, and placing the respondent on a 12-month probation plan subject to the conditions as set forth in the modified probation plan.

The respondent agrees with the adoption of the modified probation plan and requests the duration of the suspension be 90 or 180 days.

We adopt the findings and conclusions in the deputy disciplinary administrator's recommendation that was presented in oral arguments, which taken together with the parties' stipulations establish by clear and convincing evidence that Roy's conduct violated KRPC 1.1 (competence), 1.15 (safekeeping property), 1.3 (diligence), 1.5 (fees), and 8.4(g) (misconduct). The remaining issue is discipline.

That said, after review of the stipulated facts, conclusions of law, and considering the position of the parties presented at oral argument, we adopt the deputy disciplinary administrator's recommendation of a 12-month suspension, stayed pending successful completion of a 12-month probation period, the terms of which are in the respondent's modified proposed probation plan, effective from the date this opinion is filed.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Mark A. Roy is hereby suspended for a period of 12 months from the practice of law in the state of Kansas, effective from the date this opinion is filed, with the 12-month suspension stayed pending successful completion of a 12-month probation period, effective the date of this opinion in accordance with Supreme Court Rule 225(a)(2) (2023 Kan. S. Ct. R. at 281) for violating KRPC 1.1, 1.15, 1.3, 1.5, and 8.4(g).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

21