No. 108,207

In the Matter of CHRISTOPHER Y. MEEK, *Respondent*.
(289 P.3d 95)

Opinion filed December 7, 2012.

*Alexander M. Walczak*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*William K. Rork*, of Rork Law Office, Topeka, argued the cause, and *Christopher Y. Meek*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Christopher Y. Meek, of Baxter Springs, an attorney admitted to the practice of law in Kansas in 1979.

On December 16, 2011, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). After a motion to file an answer out of time was granted by order, the respondent filed an answer and a stipulation on February 10, 2012. The respondent filed a proposed probation plan on April 4, 2012. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on April 18, 2012, when the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.7(a)(2) (2011 Kan. Ct. R. Annot. 484) (conflict of interest: current clients) and 8.4(b) (2011 Kan. Ct. R. Annot. 618) (misconduct).

The panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"FINDINGS OF FACT

. . . .

"7. On October 13, 2010, [a] grand jury returned an indictment and charged the Respondent with violating 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 by knowingly and intentionally aiding and abetting the manufacture of marijuana, violating

21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 by knowingly and intentionally maintaining a place for the purpose of manufacturing marijuana, and violating 21 U.S.C. § 844 by knowingly and unlawfully possessing hydrocodone.

"8. Sixteen months later, on February 25, 2011, the Respondent entered a plea of guilty to violating 21 U.S.C. § 844 by knowingly and unlawfully possessing hydrocodone. In return for the Respondent's plea of guilty to knowingly and unlawfully possessing hydrocodone, the United States Attorney dismissed the charges related to the manufacture of marijuana.

"9. 21 U.S.C. § 844 provides, in pertinent part, as follows:

'It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this subchapter or subchapter II of this chapter.'

"10. In the written plea agreement, the Respondent provided the following factual basis for the guilty plea:

'In 2009, the defendant was an attorney licensed to practice in Kansas. Prior to September of 2009, law enforcement officials received information the defendant was obtaining prescription medication from clients. Kansas Bureau of Investigation (KBI) agents were able to corroborate these reports in 2009 when the defendant met with a client and obtained from the client prescription pain medication. KBI agents executed a search warrant at the defendant's office located at 1031 Military Avenue in Baxter Springs, Kansas, on September 1, 2009, after a client delivered 25 Hydrocodone tablets to the defendant. The tablets were recovered from the defendant's office in his desk drawer. The defendant did not have a prescription for this medication.'

"11. On March 7, 2011, the Respondent entered into a Substance Abuse Monitoring Contract with the Kansas Lawyers Assistance Program (KALAP). The KALAP monitoring contract covered a five-year time period and is set to terminate on February 25, 2016.

"12. In the KALAP monitoring agreement, the Respondent agreed to allow a monitor [to] supervise his compliance with the agreement. The Respondent agreed to have weekly contact with his KALAP monitor or the Executive Director of KALAP. The Respondent agreed to remain abstinent from alcohol and other mind altering drugs, other than medications prescribed by a physician. The Respondent agreed to report himself if he failed to maintain his abstinence. The Respondent agreed to attend three AA meetings weekly and document his attendance. The Respondent agreed to work with an AA sponsor. Finally, the Respondent agreed to submit to random drug screens. The Respondent is in compliance with the KALAP monitoring contract.

"13. On May 18, 2011, the United States District Court for the District of Kansas fined the Respondent $2,000 and placed the Respondent on probation for

two years. The Respondent's terms and conditions of his federal probation are as follows:

'The defendant shall not commit another federal, state, or local crime.

'The defendant shall not unlawfully possess a controlled substance.

'The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of placement on probation and at least two periodic drug tests thereafter, as determined by the court.

. . . .

'The defendant must comply with the standard conditions that have been adopted by this court as well as any additional conditions on the attached page.

'Standard Conditions of Probation

'1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

'2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

'3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

'4) the defendant shall support his or her dependents and meet other family responsibilities;

'5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

'6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

'7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

'8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

'9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

'10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

'11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

'12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

'13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

### 'Special Conditions of Supervision

'1. For officer safety purposes, the defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or other dangerous weapon.

'2. The defendant shall abstain from the use of alcohol during the term of supervision.

'3. The defendant shall obtain a substance abuse evaluation and follow any recommendations at the discretion of the U.S. Probation Office. If substance abuse treatment is recommended, the defendant shall successfully participate in an approved program for substance abuse, which may include urine, breath, or sweat patch testing, outpatient and/or residential treatment, and share in the costs, based on the ability to pay. The defendant shall abstain from the use of alcohol and other intoxicants during said treatment program as directed by the Probation Office.'

The Respondent has complied with the terms and conditions of his federal probation.'

### "Conclusions of Law

"14. Based upon the Respondent's stipulation and the above findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.7(a)(2) and KRPC 8.4(b), as detailed below.

### "KRPC 1.7

"15. KRPC 1.7 provides:

'(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

. . . .

(2) there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.'

The factual basis supporting the Respondent's plea to unlawfully possessing hydrocodone establishes that he 'obtain[ed] prescription medication from clients.' The Respondent did not have a prescription for hydrocodone. Unlawfully accepting prescription drugs from a client creates a substantial risk that the Respondent's personal interest will materially limit the Respondent's representation of the client. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.7(a)(2).

## "KRPC 8.4(b)

"16. 'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the Respondent entered a plea of guilty to unlawful possession of hydrocodone. The conviction for the drug offense adversely reflects on the Respondent's fitness as a lawyer in other respects. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 8.4(b).

## "American Bar Association
## Standards for Imposing Law Sanctions

"17. In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"18. *Duty Violated.* The Respondent violated his duty to his clients, the public, and the legal profession to maintain his personal integrity.

"19. *Mental State.* The Respondent knowingly violated his duty.

"20. *Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to the legal profession.

## "Aggravating and Mitigating Factors

"21. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"22. *Selfish Motive.* Accepting prescription medication from a client is a selfish act.

"23. *Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the Respondent to practice law in the State of Kansas in 1979. At the time of the misconduct, the Respondent has been practicing law for approximately 30 years.

"24. *Illegal Conduct, Including that Involving the Use of Controlled Substances.* The Respondent engaged in illegal conduct. The Respondent unlawfully possessed prescription drugs. Further, the Respondent received the hydrocodone from his client.

"25. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"26. *Absence of a Prior Disciplinary Record.* The Respondent has not previously been disciplined.

"27. *Absence of a Dishonest Motive.* The Respondent's misconduct does not appear to have been motivated by dishonesty.

"28. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.* The Respondent suffers from alcoholism and drug addiction. It is clear that the Respondent's alcoholism and drug addiction contributed to his misconduct.

"29. *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The Respondent fully cooperated with the disciplinary process. Additionally, the Respondent admitted the facts that gave rise to the violations.

"30. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The Respondent is an active and productive member of the bar of Baxter Springs, Kansas. The Respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by many letters reviewed by the Hearing Panel.

"31. *Imposition of Other Penalties or Sanctions.* As a result of the Respondent's conviction, the federal court fined the Respondent $2,000.00 and placed the Respondent on probation for two years.

"32. In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.32 Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

'5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

'7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"Recommendation

"33. The Disciplinary Administrator recommended that the Respondent be disbarred. The Respondent recommended that his plan of probation be adopted and that the Respondent be allowed to continue practicing law.

"34. In order for the Hearing Panel to consider recommending that the Respondent be placed on probation, the Respondent must first comply with Kan. Sup. Ct. R. 211(g)(1) and Kan. Sup. Ct. R. 211(g)(2). Additionally, the Hearing Panel must then consider, based upon the factors detailed in Kan. Sup. Ct. R.

211(g)(3), whether to recommend to the Court that the Respondent be placed on probation.

'(1) If the Respondent intends to request that the Respondent be placed on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least fourteen days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court.

'(2) If the Respondent provides each member of the Hearing Panel and the Disciplinary Administrator with a plan of probation, the Respondent shall immediately and prior to the hearing on the Formal Complaint put the plan of probation into effect by complying with each of the terms and conditions of the probation plan.

'(3) The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint;

(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii) the misconduct can be corrected by probation; and

(iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

In this case, the Respondent developed a workable, substantial, and detailed plan of probation. Additionally, the Respondent provided a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint. Also, the Respondent put the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan. Further, the Respondent's misconduct can be corrected by probation. Finally, placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.

"35. Based upon the stipulations, the findings of fact, the conclusions of law, the applicable ABA Standards, and Kan. Sup. Ct. R. 211(g), the Hearing Panel unanimously recommends that the Court suspend the Respondent's license to practice law for a period of one year. The Hearing Panel further recommends that the Court place [Respondent] on probation for a period of time to coincide

with the term of his contract with KALAP, terminating on February 25, 2016. The Hearing Panel further recommends that the Respondent's probation be made subject to the following terms and conditions:

'a. *Abstinence*. The Respondent shall remain abstinent from alcohol and all other mind-altering drugs, except medications prescribed by a medical doctor. In the event the Respondent is prescribed a mind-altering drug by a medical doctor, the Respondent shall immediately inform the Executive Director of KALAP, the KALAP monitor, and the Disciplinary Administrator's office. The Respondent shall execute appropriate releases so that the medical doctor may discuss the prescription of the medication with the Director of KALAP, the KALAP monitor, and the Disciplinary Administrator's office. Beginning July 1, 2012, the Respondent shall provide the Disciplinary Administrator with a report regarding the Respondent's compliance with this term of probation.

'b. *Aftercare*. In September, 2009, the Respondent completed inpatient treatment with Valley Hope in Atchison, Kansas. Upon release from inpatient treatment, the treatment facility recommended that the Respondent participate in aftercare. The Respondent shall execute appropriate releases so that Valley Hope may provide information to the Executive Director of KALAP, the KALAP monitor, and the Disciplinary Administrator. The Respondent shall continue participating in aftercare pursuant to the discharge recommendations. Beginning July 1, 2012, the Respondent shall provide quarterly reports to the Disciplinary Administrator regarding his compliance with the aftercare program recommended by Valley Hope.

'c. *Alcohol and Drug Evaluation*. As a condition of the Respondent's federal criminal probation, the Respondent submitted to an alcohol and drug evaluation. Within 14 days of this report, the Respondent shall execute appropriate releases so that the Executive Director of KALAP, the Respondent's KALAP monitor, each member of the Hearing Panel, and the Disciplinary Administrator's office may receive a copy of the report of the alcohol and drug evaluation. After the appropriate releases have been executed and within 30 days of the date of this report, the Respondent shall provide the Executive Director of KALAP, the KALAP monitor, each member of the Hearing Panel, and the Disciplinary Administrator's office with a copy of the alcohol and drug evaluation. Further, the Respondent shall comply with all recommendations contained in the report for treatment, aftercare, meetings, relapse prevention, as well as recommendations that may arise during the treatment, aftercare, meetings, and relapse prevention. If the Respondent fails to comply with the recommendations contained in the report or as may arise during the treatment, aftercare, meetings, or relapse prevention, the Respondent shall immediately report his lack of compliance to the Disciplinary Administrator. Beginning July 1, 2012, the Respondent shall provide quarterly reports to the Disciplinary

Administrator regarding his compliance with the recommendations contained in the report of the alcohol and drug evaluation.

'd. *Substance Abuse Monitoring Contract.* On March 7, 2011, the Respondent entered into a Substance Abuse Monitoring Contract. Within fourteen days of the date of this report, the Respondent shall execute appropriate releases so that the Executive Director of KALAP, other KALAP staff, and the Respondent's KALAP monitor may discuss the Respondent's compliance with the contract with the Disciplinary Administrator's office. The Respondent shall comply with each and every term of the Substance Abuse Monitoring Contract. If the Respondent fails to comply with the terms of the Substance Abuse Monitoring Contract, the Executive Director, other KALAP staff, and the KALAP monitor shall immediately report the Respondent's lack of compliance with the Disciplinary Administrator's office. If the Respondent fails to comply with the terms of the Substance Abuse Monitoring contract, the Respondent shall immediately report his lack of compliance to the Disciplinary Administrator. Beginning July 1, 2012, the KALAP monitor and the Respondent shall provide quarterly reports to the Disciplinary Administrator including current information regarding the Respondent's compliance with each and every term of the Substance Abuse Monitoring Contract.

'e. *Federal Probation.* Currently, the Respondent is on federal probation. Beginning July 1, 2012, the Respondent shall provide quarterly reports regarding his status on federal probation. If the Respondent violates his federal probation, the Respondent shall immediately report the violation to the Disciplinary Administrator. In the event the Respondent is released from federal probation, the Respondent shall provide a final report regarding his federal probation, with documentary support of his release from federal probation.

'f. *Random Drug Screens.* Currently, the Executive Director of KALAP, the KALAP monitor, and the federal probation officer require the Respondent to submit to random drug screens. Within 14 days of the date of this report, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a copy of each and every drug screen test results since September 1, 2009, requested by the federal probation officer, the Executive Director of KALAP, and KALAP monitor. The Respondent shall comply with any and all requests made by the Director of KALAP, the KALAP monitor, and the federal probation officer. In addition, the Disciplinary Administrator may require the Respondent to submit to random drug screens at a drug testing center selected by the Disciplinary Administrator. The Respondent shall be responsible for all costs associated with the random drug screens. If the Disciplinary Administrator directs the Respondent to appear at a specific drug testing center for a random drug screen, the Respondent shall appear at the drug testing center within eight hours.

'g. *Continuing Legal Education*. The Respondent shall successfully complete 16 hours of continuing legal education prior to June 15, 2013, including six ethics hours, which amounts to four additional ethics continuing legal education hours for the 2012-2013 compliance period.

'h. *Continued Cooperation*. The Respondent shall continue to cooperate with the Disciplinary Administrator. If the Disciplinary Administrator requests any additional information, the Respondent shall timely provide such information.

'i. *Additional Violations*. The Respondent shall not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the Respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the Respondent shall immediately report such violation to the KALAP monitor and the Disciplinary Administrator. The Disciplinary Administrator shall take immediate action directing the Respondent to show cause why the probation should not be revoked.

"36. Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, the discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2011 Kan. Ct. R. Annot. 334). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of both the hearing before the panel and the hearing before this court. The respondent filed no exceptions to the hearing panel's final hearing report. The panel's findings of fact are thus deemed admitted. See Supreme Court Rule 212(c), (d) (2011 Kan. Ct. R. Annot. 352).

The evidence before the hearing panel establishes the charged misconduct of the respondent by clear and convincing evidence

and supports the panel's conclusions of law. We therefore also adopt the panel's conclusions.

The only remaining issue before us is the appropriate discipline. At the hearing before this court, the office of the Disciplinary Administrator recommended that the respondent be disbarred because the respondent committed a criminal offense when he obtained prescription drugs from a client. As justifications for the sanction of disbarment, the office of the Disciplinary Administrator noted that the criminal offense occurred in the context of an attorney-client relationship; the respondent exploited the attorney-client relationship for his personal reasons; the client was vulnerable; and the conduct was serious and implicated the client in criminal conduct. The respondent requested that his plan of probation be adopted and that he be allowed to continue to practice law. The hearing panel unanimously recommended that the respondent be suspended from the practice of law for 1 year and that the suspension be followed by a period of probation coinciding with respondent's contract with KALAP, which expires on February 25, 2016, approximately 40 months from the date of this decision.

As the panel noted, ABA Standards 4.32, 5.12, and 7.2 suggest that suspension, not disbarment, is appropriate in this case. On the other hand, these standards also suggest that the serious nature of this offense means probation is not a sufficient sanction. In considering the seriousness of the offense, we are especially troubled that respondent created a conflict of interest for personal gain and in doing so placed his client at risk. We are also concerned about the safety of the public when the respondent resumes practicing law given the respondent's long-term issues with alcohol and drugs. Consequently, we conclude a period of probation is appropriate to allow monitoring. A minority of the court would impose a shorter period of suspension and probation than imposed by the majority.

## Conclusion and Discipline

It Is Therefore Ordered that Christopher Y. Meek be suspended from the practice of law in the state of Kansas for a period of 40 months in accordance with Supreme Court Rule 203(a)(2)

(2011 Kan. Ct. R. Annot. 280), effective on the filing of this opinion. After respondent has served 12 months of suspension, the remaining 28 months of suspension will be stayed, and respondent will be placed on probation for a period of 28 months under the terms and conditions set forth above in the hearing panel's recommendations.

It Is Further Ordered that if Christopher Y. Meek fails to abide by the terms and conditions of his probation, a show cause order shall issue to the respondent.

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2011 Kan. Ct. R. Annot. 379).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas reports.

NUSS, C.J., not participating.

DAVID E. BRUNS, Judge, assigned.