No. 110,117

In the Matter of BRENDON P. BARKER, *Respondent*.

(321 P.3d 767)

Opinion filed April 11, 2014.

*Alexander M. Walczak*, Deputy Disciplinary Administrator, argued the cause and was on the brief for petitioner.

*J. Steven Pigg*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause and was on the brief for respondent, and *Brendon P. Barker*, respondent, argued the cause pro se.

*Per Curiam:* This is a contested original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Brendon P. Barker, of Pratt, an attorney admitted to the practice of law in Kansas in 2001.

On March 20, 2013, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on April 29, 2013, admitting that he violated KRPC 1.1 (2013 Kan. Ct. R. Annot. 446) (competence); KRPC 1.3 (2013 Kan. Ct. R. Annot. 464) (diligence); KRPC 1.4 (2013 Kan. Ct. R. Annot. 484) (communication); KRPC 1.16(a)(2) (2013 Kan. Ct. R. Annot. 569) (declining or terminating representation); and KRPC 8.4(g) (2013 Kan. Ct. R. Annot. 655) (engaging in any other conduct that adversely reflects on the lawyer's fitness to practice law).

On June 5, 2013, a hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys, where the respondent was present and was represented by counsel. Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to the court:

## "Findings of Fact

. . . .

"8.    The Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas on April 27, 2001. The Missouri Supreme Court admitted the respondent to the practice [of] law in September, 2001.

"9.    The respondent is from Pratt, Kansas. The respondent maintained a law office in Overland Park, Kansas. Later, the respondent established a law office, with his brother, in Pratt, Kansas.

"10.    In October, 2006, D.H. retained the respondent to prepare and file a conservatorship and guardianship case for her mother, J.H., who was unwell following a stroke. Over time, D.H. paid the respondent $1,825.00 for the representation. On October 6, 2006, the respondent filed a petition for conservatorship with the Jackson County, Missouri, probate court.

"11.    The inventory for the estate was due on November 6, 2006. On November 28, 2006, the court issued a notice that the inventory was delinquent. The court ordered D.H. to file the inventory by December 12, 2006. The court sent the notice to the respondent. The respondent failed to forward the notice to D.H. D.H. did not know that the inventory was delinquent.

"12.    On December 3, 2006, J.H. died.

"13.    On January 2, 2007, the court issued a citation to D.H. to appear with counsel for a hearing on February 26, 2007, to file the inventory, to show good cause why the inventory had not been filed, and to show why the letters of conservatorship should not be revoked. It appears that the court forwarded a copy of the notice to D.H. by certified mail and to the respondent by ordinary mail.

"14.    On October 9, 2007, the respondent filed an annual report, a certified copy of J.H.'s death certificate, a final settlement, and an account transaction report. Unfortunately, the documentation that the respondent filed was incomplete.

"15.    In December, 2007, D.H. moved to a different residence. D.H. provided the respondent with her new address.

"16.    On January 7, 2008, the court issued an order to show cause why D.H. should not be removed as conservator. The order also required D.H. to appear with the respondent in court on February 4, 2008. It appears that the court forwarded the notice to D.H. by certified mail and to the respondent by ordinary mail. The notice sent to D.H. was sent to her old address. Neither the respondent nor D.H. appeared in court on February 4, 2008.

"17.    The respondent did not communicate with D.H. following November, 2007.

"18.    On March 24, 2008, the court sent the respondent an order to show cause why D.H. should not be removed as conservator and to require D.H. to appear with the respondent in court on April 28, 2008. It appears that the court forwarded a copy of the order to D.H. by ordinary mail and to the respondent by ordinary mail. Again, the notice sent to D.H. was sent to her old address.

"19.  Neither the respondent nor D.H. appeared in court on April 28, 2008. However, that day, the respondent requested that the hearing on the order to show cause be continued. The court continued the hearing to June 2, 2008.

"20.  The hearing on the order to show cause was again continued. On July 21, 2008, the court conducted the hearing. While the respondent had received notice of the hearing, he failed to advise D.H. of the hearing. Neither the respondent nor D.H. appeared. At the hearing, the court revoked D.H.'s letters of conservatorship.

"21.  On September 8, 2008, the court appointed Rebecca Lake Wood, Public Administrator of Jackson County, Missouri, to serve as conservator *ad litem* in J.H.'s estate case. It appears that the court forwarded a copy of the order to the respondent.

"22.  On November 13, 2008, the court issued a notice of hearing to the respondent. The court scheduled the hearing for the purpose of considering a claim against the estate for an unpaid probate bond premium. The court forwarded the notice to the respondent via certified mail.

"23.  In February, 2009, the Public Administrator filed suit against D.H., as conservator of J.H.'s estate. Service of the petition was D.H.'s first notice that there was a problem with her mother's conservatorship. In March, 2009, D.H. retained new counsel, answered the lawsuit, and brought the respondent in the action as a third party defendant.

"24.  The respondent never informed D.H. that she needed court approval for any expenditure she made, including the respondent's own fee. Thus, every expenditure made by D.H. as conservator was in controversy in the lawsuit. As a result, in the course of the lawsuit, D.H. answered extensive discovery.

"25.  On March 15, 2010, the respondent filed an answer to D.H.'s third party petition.

"26.  After repeatedly assuring D.H.'s new counsel that he would help cover the costs of her defense, in May, 2011, at the pre-trial conference, D.H.'s new counsel received notice that the respondent filed bankruptcy.

"27.  As a result, D.H. had to resolve the case with the Public Administrator and the Bar Plan on her own. Thereafter, on May 16, 2011, D.H. entered into a settlement agreement. D.H. paid the Public Administrator $4,897.00, the Bar Plan $4,080.88, and her new counsel $10,548.67, for a total of $19,526.55.

"28.  At the time of the hearing on the formal complaint, the respondent had not reimbursed D.H. for the unearned fees nor for the out-of-pocket expenses incurred by D.H. as a result of the suit filed by the Public Administrator.

"29.  On March 26, 2012, D.H. filed a complaint with the disciplinary administrator's office. Thereafter, on April 23, 2012, the respondent filed a response to the initial complaint. In his response, the respondent attested to the accuracy of D.H.'s complaint.

"30.  On March 20, 2013, Mr. Walczak filed a formal complaint against the respondent. On April 29, 2013, the respondent filed an answer to the formal complaint.

## "Conclusions of Law

"31.   Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.16, and KRPC 8.4(g), as detailed below.

## "KRPC 1.1

"32.   Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The respondent failed to provide competent representation to D.H. when he failed to act with sufficient thoroughness in preparing the inventory and other documents filed with the court. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.1.

## "KRPC 1.3

"33.   Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. The respondent failed to diligently and promptly represent D.H. in connection with her mother's probate case by failing to timely file documents and appear in court. Because the respondent failed to act with reasonable diligence and promptness in representing his client, the hearing panel concludes that the respondent violated KRPC 1.3.

## "KRPC 1.4

"34.   KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the respondent violated KRPC 1.4(a) when he failed to inform D.H. of the deficiencies of the documents filed and when he failed to inform her of the many court hearings scheduled in her mother's probate case. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

## "KRPC 1.16

"35.   KRPC 1.16 requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The respondent violated KRPC 1.16(d) when he failed to return the unearned fees to D.H. The hearing panel concludes that the respondent violated KRPC 1.16(d).

"KRPC 8.4(g)

"36. 'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). The respondent engaged in conduct that adversely reflects on his fitness to practice law when he abandoned his representation of D.H. The hearing panel concludes that the respondent violated KRPC 8.4(g).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"37. In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"38. *Duty Violated.* The respondent violated his duty to his client to provide competent and diligent representation. Additionally, the respondent violated his duty to his client to provide adequate communication.

"39. *Mental State.* The respondent knowingly violated his duties.

"40. *Injury.* As a result of the respondent's misconduct, the respondent caused actual, serious financial injury to D.H.

"Aggravating and Mitigating Factors

"41. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"42. *A Pattern of Misconduct.* The respondent engaged in a pattern of misconduct. For a period of approximately five years, the respondent neglected the representation of D.H. in her mother's conservatorship.

"43. *Multiple Offenses.* The respondent committed multiple rule violations. The respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.16, and KRPC 8.4(g). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"44. *Vulnerability of Victim.* D.H. testified that other than an amicable divorce, this was her first experience with a legal matter. Thus, D.H. was inexperienced in legal matters. The hearing panel concludes that based upon D.H.'s inexperience in legal matters, she was vulnerable to the respondent's misconduct.

"45. *Indifference to Making Restitution.* At the time of the hearing, the respondent had taken no steps to provide D.H. with any restitution for the $21,351.55 loss she incurred.

"46. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its rec-

ommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"47. *Absence of a Prior Disciplinary Record.* The respondent has not previously been disciplined.

"48. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.* The respondent suffers from depression. It appears that the respondent's depression contributed to the misconduct in this case.

"49. In addition to practicing law, the respondent engaged in business ventures with his family. Specifically, the respondent and his family owned and operated four Jimmy John restaurants in Oklahoma and the respondent and his family owned and operated Orion Ethanol, Inc., an ethanol plant. The respondent spent considerable time attempting to keep the Jimmy John restaurants from failing. The ethanol plant failed and sought the protections offered under the bankruptcy law. Accordingly, the hearing panel finds that the respondent's other business interests distracted him from the practice of law and the distraction contributed to the respondent's misconduct.

"50. In May, 2006, the respondent and his wife separated and in 2007, his wife filed an action in divorce against the respondent. Additionally, the respondent's mother suffered from Alzheimer's disease. Finally, in late 2008, the respondent was involved in a near fatal car accident in Oklahoma, when he was struck by a drunk driver. As a result of the car accident, the respondent suffered a head injury. The respondent failed to provide information regarding details of his head injury to the hearing panel. Regardless, it is clear that the respondent's personal and emotional problems contributed to the respondent's misconduct in this case.

"51. *The Present and Past Attitude of the Attorney as Shown by His Cooperation During the Hearing and His Full and Free Acknowledgment of the Transgressions.* Despite the respondent's failure to file a timely answer to the formal complaint, the respondent otherwise fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts that gave rise to the violations.

"52. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The respondent is an active and productive member of the bar of the State of Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by three letters received by the hearing panel.

"53. *Remorse.* At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"54. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.42 Suspension is generally appropriate when:

(a)   a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)   a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'4.52   Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client.

'6.22   Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.

'7.2   Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

*"Recommendation*

"55.   Mr. Walczak recommended that the respondent be suspended from the practice of law for a period of six to nine months. Mr. Pigg argued that the respondent's conduct was negligent and that a censure is the appropriate discipline to impose in this case. Further, Mr. Pigg argued that unless the respondent retained his law license he would be unable to provide restitution to D.H., which he intended to provide even though he is not legally obligated to do so because the claim had been discharged in bankruptcy.

"56.   Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of six months. The hearing panel further recommends that prior to reinstatement, the respondent be required to undergo a hearing pursuant to Kan. Sup. Ct. R. 219. At the reinstatement hearing, the hearing panel recommends that the respondent be required to establish that he has undergone a thorough psychological evaluation, complied with the recommendations contained in the report of the psychological evaluation, and received adequate treatment to address his problem with depression. Finally, the hearing panel recommends that the respondent be required to show that he has paid or entered into a written plan to pay D.H. $21,351.55 for her expenses associated with the respondent's misconduct, prior any consideration of a petition for reinstatement.

"57.   Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

The respondent filed exceptions to the final hearing report challenging the panel's conclusions that (1) he violated KRPC 1.16(d); (2) he knowingly violated his duties to D.H.; (3) he engaged in a pattern of misconduct for 5 years; (4) he committed multiple offenses; (5) D.H. was a vulnerable client; (6) he was indifferent to making restitution to D.H.; and (7) he failed to file a timely answer.

Respondent also challenged the panel's application of certain sections of the ABA Standards for Imposing Lawyer Sanctions and argued that the panel's recommended discipline was unwarranted based on the mitigating evidence presented at the hearing.

With the exception of Issue 4, respondent raised the above issues in his subsequently filed brief. They will be addressed in turn.

## DISCUSSION

### Violation of KRPC 1.16(d)

The respondent first argues on appeal that the panel's conclusion, contained in Paragraph 35, that he violated KRPC 1.16(d) by failing to return unearned legal fees to D.H. was not supported by clear and convincing evidence. The respondent concedes that the panel properly found that D.H. paid him $1,825 to represent her. But he contends that no evidence was presented suggesting that he did not earn that fee. He notes that the formal complaint included no allegation that the fee was unearned, resulting in no evidence being presented at the hearing "regarding the specific fee arrangement nor the number of hours or effort expended or expenses incurred by respondent in representing complainant."

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, the discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2013 Kan. Ct. R. Annot. 356). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]). This court does not reweigh the evidence or assess the credibility of witnesses. *In re Comfort*, 284 Kan. 183, 190, 159 P.3d 1011 (2007). "Rather, this court examines any disputed findings of fact and determines whether clear and convincing evidence supports the panel's findings. [Citation omitted.] If so, the findings will stand." *In re Trester*, 285 Kan. 404, 408-09, 172 P.3d 31 (2007).

D.H. testified at the hearing that she paid the respondent a total of $1,825 over four separate payments, the last payment being made sometime in January 2007. The respondent conceded that D.H. paid him this amount and that he had never refunded her any part of the fees she advanced to him. But the respondent testified at the hearing that the money was paid "to get the guardianship/conservatorship opened and established, which was done. It did get opened." Though the record does contain evidence showing that D.H. suffered $21,351.55 in damages as a result of the respondent's misconduct, the record does not contain any evidence regarding the fee arrangement that the respondent and D.H. entered into nor does it contain any evidence showing the amount of time or effort that the respondent spent working on D.H.'s case. Based on this lack of evidence, we conclude that there is not clear and convincing evidence within the record establishing that the respondent violated KRPC 1.16(d) by failing to return unearned legal fees to D.H.

*The Hearing Panel's Findings under ABA Standard 3.0*

Next, the respondent challenges several findings that the panel made pursuant to ABA Standard 3.0 regarding his mental state and the existence of several aggravating factors. Specifically, he challenges the panel's findings that (1) he knowingly violated his duties to D.H.; (2) he engaged in a pattern of misconduct for 5 years; (3) D.H. was a vulnerable client; (4) he was indifferent to making restitution to D.H.; and (5) he failed to file a timely answer.

This court bases its disciplinary decision on the facts and circumstances of the violations and the aggravating and mitigating circumstances present. *In re Johanning,* 292 Kan. 477, 490, 254 P.3d 545 (2011). And although not mandated by its rules, this court and disciplinary panels "[h]istorically" turn to the ABA Standards for Imposing Lawyer Sanctions to guide the discipline discussion. See ABA Compendium of Professional Responsibility Rules and Standards (2012); see also *In re Woodring,* 289 Kan. 173, 180, 186, 210 P.3d 120 (2009) (discussing and applying ABA Standards); *In re Rumsey,* 276 Kan. 65, 78-79, 71 P.3d 1150 (2003) (citing and discussing ABA Standards).

Under the ABA Standards, four factors are considered in assessing punishment: (1) the ethical duty violated by the lawyer; (2) the lawyer's mental state; (3) the actual or potential injury resulting from the misconduct; and (4) the existence of aggravating and mitigating circumstances. See *Rumsey*, 276 Kan. at 78 (listing the four components of the ABA Standards' framework); ABA Standard 3.0.

This court's rules require that a disciplinary panel explain "[m]itigating or aggravating circumstances which affect the nature or degree of discipline." Supreme Court Rule 211(f). The panel must consider the evidence presented as to aggravating and mitigating circumstances and determine the weight to be assigned to each in arriving at an appropriate discipline. *In re Walsh*, 286 Kan. 235, 248, 182 P.3d 1218 (2008). On appeal, this court determines whether it agrees with the panel's findings regarding aggravating and mitigating circumstances. See *In re Kline*, 298 Kan. 96, 219, 311 P.3d 321 (2013).

### 1. *The Respondent Acted with Knowledge*

The respondent contends that his violations of the KRPC arose from omissions and not intentional conduct. Thus, he argues that his conduct should be considered "negligent" instead of "knowingly."

"The ABA Standards identify three mental states: 'intent,' the highest culpable mental state; 'knowledge,' the intermediate culpable mental state; and 'negligence,' the least culpable mental state. Under the ABA Standards, a lawyer acts intentionally when acting with the 'conscious objective or purpose to accomplish a particular result,' while a lawyer acts with knowledge when acting 'with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result.' Finally, a lawyer acts negligently when failing "to be aware . . . that a result will follow . . . . See ABA Standards, p. 462." *In re Kline*, 298 Kan. at 216.

In making the argument that his conduct should be considered negligent, the respondent appears to confuse the concepts of intent and knowledge. There was no evidence presented at the hearing that the respondent intended to harm D.H., but the record does contain admissions by the respondent that he was aware that his conduct caused or could cause harm to D.H. For example, he admitted to being aware of D.H. potentially being held in contempt

of court as a result of his actions or omissions. And despite this knowledge, he continued to request numerous continuances of the contempt hearing without informing D.H. Accordingly, the panel properly found that the respondent acted knowingly, *i.e.*, that he acted "with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result."

### 2. *Pattern of Misconduct*

Next, the respondent contends that the panel erred when it found that he engaged in a pattern of misconduct lasting 5 years. He contends that the applicable period of time only lasted 2 years and 5 months, *i.e.*, from October 2006, when D.H. retained him, until March 2009, when D.H. retained new counsel.

ABA Standard 9.21 and 9.22(c) indicate that "a pattern of misconduct" is a factor that may justify an increase in the degree of discipline to be imposed. Notably, the ABA Standards do not indicate that a certain amount of time must pass before "a pattern of misconduct" can arise. Instead, it appears that a "pattern of misconduct" will be found if misconduct is repeated several times within the same general time frame. See *In re Ketter*, 268 Kan. 146, 154-55, 992 P.2d 205 (1999) (finding that respondent's 1988 convictions were too remote in time to be considered as establishing a pattern of misconduct).

Even if we accept the respondent's claim that his pattern of misconduct only lasted for 2 years and 5 months, it does not diminish the fact that he did engage in repeated acts of misconduct during that time period while representing D.H. Accordingly, though the panel may have erred in finding that respondent's pattern of misconduct lasted 5 years, it did not err in finding that a pattern of misconduct did exist and could be considered as an aggravating factor.

### 3. *Vulnerable Client*

The respondent takes issue with the panel's finding that D.H. was a vulnerable client. In Paragraph 44 of the final hearing report, the panel stated: "D.H. testified that other than an amicable divorce, this was her first experience with a legal matter. Thus, D.H.

was inexperienced in legal matters. The hearing panel concludes that based upon D.H.'s inexperience in legal matters, she was vulnerable to the respondent's misconduct." The respondent contends that if inexperience in legal matters was the standard for determining vulnerability, then nearly all clients would be considered vulnerable. The respondent contends that characteristics normally associated with vulnerability (*e.g.*, being very young, elderly, uneducated, or saddled with mental or physical infirmities) should be the basis for a vulnerability finding. Because no evidence was presented at the hearing showing that D.H. had these or similar characteristics, the respondent argues that the panel erred in finding that D.H. was a vulnerable client.

In support of his argument that D.H. was not a vulnerable client, the respondent cites *In re Wall*, 272 Kan. 1298, 38 P.3d 640 (2002), where this court rejected the panel's finding of vulnerability based on evidence that the client, a personal injury claimant, (1) had a metal jaw, (2) had a ruined right hip, (3) would have trouble having children, and (4) relied on her attorney to protect her claim from being barred by the statute of limitations. The court held that the evidence did not establish the client's "vulnerability" as an aggravating factor—related to the attorney's misconduct in allowing the statute of limitations to expire—because every personal injury plaintiff relies on counsel to protect his or her claim. Furthermore, the court noted that the disciplinary panel did not have the opportunity to listen to and observe the client because the attorney had stipulated to the disciplinary violation. 272 Kan. at 1310.

The Deputy Disciplinary Administrator counters by arguing that a vulnerability finding can be based on a client's inexperience with legal matters, citing *In re Cole*, 268 Kan. 171, 175, 991 P.2d 422 (1999), in support. The Deputy Disciplinary Administrator also contends that based on *In re Berg*, 264 Kan. 254, 268, 955 P.2d 1240 (1998), an emotionally distraught client can be considered "vulnerable." Based on the evidence showing that D.H.'s father died in 2005 and that her mother suffered at stroke in the fall of 2006 and died that December, the Deputy Disciplinary Administrator argues that D.H. was a vulnerable client due to the emotional

state she was in during the course of the respondent's representation of her.

Because the panel based its vulnerability finding solely on D.H.'s inexperience with legal matters, we will not consider the Deputy Disciplinary Administrator's argument that the vulnerability finding could have also been based on D.H. being emotionally distraught.

As noted by this court in *In re Wall*, 272 Kan. at 1309-10, the respondent in *In re Cole* did not challenge the vulnerability finding made by the panel in that case, so the propriety of the finding was not reviewed on appeal by this court. Accordingly, *In re Cole* does not establish precedent for finding a client vulnerable based on inexperience with legal matters. Based on *In re Wall*, it would appear that inexperience with legal matters alone is not sufficient for a vulnerability finding because nearly every client fits within this category—much like every client relies on counsel to ensure that his or her claim will not be barred by the statute of limitations. Accordingly, we conclude that the evidence presented at the hearing does not support a finding that D.H. was a vulnerable client. A minority of the court, however, would find the panel's vulnerability determination was supported by the evidence in the record.

### 4. *Indifferent to Making Restitution*

Next, the respondent argues that the panel erred in concluding that he was indifferent to making restitution. He contends that his severe financial difficulties prevented him from making restitution. Furthermore, he notes that he presented a check for $5,000 to D.H. at the conclusion of the hearing, which he argues shows that he is committed to making full restitution.

The panel based its finding that the respondent was indifferent to making restitution on the fact that "[a]t the time of the hearing, the respondent had taken no steps to provide D.H. with any restitution for the $21,351.55 loss she incurred." At the hearing, the respondent acknowledged that D.H.'s damages were approximately $20,000 and that at no time prior to the hearing had he made any offer to make payments to her. Accordingly, we conclude that based on the respondent's inactions at making or attempting

to make restitution prior to the hearing, the panel properly found that the respondent was indifferent to making restitution.

5. *Timely Answer*

Next, the respondent takes issue with the panel's finding in Paragraph 51 that he failed to file a timely answer to the formal complaint. In his brief, respondent states:

"Respondent's counsel met with Deputy Disciplinary Administrator, Mr. Walczak, on April 8, 2013, to review information and discuss the matter. The Deputy Disciplinary Administrator agreed to an extension to April 29 to file the answer. If the answer was untimely, the fault rests with respondent's counsel, not respondent."

The Deputy Disciplinary Administrator responded in his brief by stating that the respondent "is correct in that his attorney was given an extension to April 29, 2013, to file his Answer, but the Panel is also correct that the Answer was untimely."

Supreme Court Rule 211(b) (2013 Kan. Ct. R. Annot. 357) states: "The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel."

The record shows that the formal complaint was served on March 20, 2013. Thus, the respondent's deadline for serving his answer upon the Disciplinary Administrator was April 9, 2013. Because the respondent secured an extension on April 8 to serve his answer on April 29, it appears that his answer—which was served on the Disciplinary Administrator on April 29—was timely. Accordingly, the panel was mistaken in finding that the respondent failed to timely respond to the formal complaint.

Notably, however, the panel's finding was made within Paragraph 51 where it found that "the respondent otherwise fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts that gave rise to the violations." Paragraph 51 was one of the paragraphs identifying mitigating circumstances. Neither the Deputy Disciplinary Administrator nor the panel claimed that the respondent violated an ethical or court rule by filing his answer on April 29. Accordingly, though the panel erred

in finding that the respondent's answer was untimely, it appears that this finding did not cause prejudice to the respondent.

*The Panel's Recommended Discipline*

Based on the application of ABA Standards 4.42, 4.52, 6.22, and 7.2, the hearing panel recommended that the respondent be suspended for a period of 6 months. The hearing panel further recommended that prior to reinstatement, the respondent be required to undergo a hearing pursuant to Supreme Court Rule 219(d) (2013 Kan. Ct. R. Annot. 407). At the reinstatement hearing, the hearing panel recommended that the respondent be required to establish that he has undergone a thorough psychological evaluation, complied with the recommendations contained in the report of the psychological evaluation, and received adequate treatment to address his problems with depression. Finally, the hearing panel recommended that the respondent be required to show that he has paid or entered into a written plan to pay D.H. $21,351.55 for her expenses associated with the respondent's misconduct prior to any consideration of a petition for reinstatement.

This recommendation is advisory only and does not prevent this court from imposing greater or lesser sanctions. Supreme Court Rule 212(f); see *In re Ireland,* 294 Kan. 594, 603-04, 276 P.3d 762 (2012). This court bases its disciplinary decision on the facts and circumstances of the violations and the aggravating and mitigating circumstances present. *In re Johanning,* 292 Kan. at 490.

The respondent first argues that the ABA Standards the panel applied are inapplicable to his conduct because he did not "knowingly" cause harm to D.H. But as already shown above, the panel properly found that the respondent knowingly violated his duties to D.H. which caused her injury. Accordingly, based on the applicable mental state, the panel properly applied the ABA Standards.

Next, the respondent argues that the panel erred in applying ABA Standard 7.2 because, according to the respondent, that standard only applies to

" 'cases involving false and misleading communications about the lawyer or the lawyer's services, improper communication of fields of practice, improper solicitation of professional employment from a prospective client, unreasonable or im-

proper fees, unauthorized practice of the law, *improper withdrawal from representation*, or failure to report professional misconduct,' none of which are involved here." (Emphasis added.)

The language quoted by the respondent is from ABA Standard 7.0. ABA Standard 7.2 states: "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system."

In making this argument, the respondent overlooks the fact that in his answer to the formal complaint, he conceded that he violated KRPC 1.16(a)(2) (2013 Kan. Ct. R. Annot. 569), which states in pertinent part: "[A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client." Moreover, the record shows that the respondent failed to take any steps to notify D.H. of his inability to represent her or to ensure that her interests were protected. See KRPC 1.16(d) ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests . . . ."). Thus, we conclude that the panel properly applied ABA Standard 7.2 to the respondent's conduct.

Next, the respondent argues that public censure, not a 6-month suspension, is the appropriate sanction based on the mitigating factors present in his case. The panel specifically noted these mitigating factors: (1) the absence of any prior disciplinary actions; (2) the respondent's depression as a contributing factor to his misconduct; (3) the failure of the business ventures that the respondent engaged in with his family; (4) the dissolution of his marriage; (5) his mother's illness; (6) his involvement in a serious automobile accident; (7) his cooperation with the disciplinary process; (8) the respect of his peers; and (9) his genuine remorse for his misconduct.

As mentioned above, the panel noted as aggravating factors: (1) the pattern of misconduct the respondent engaged in; (2) his multiple offenses; (3) the vulnerable nature of his client; and (4) his indifference to making restitution. We have already determined

that the panel erred in finding that D.H. was a vulnerable client and, accordingly, do not consider this factor.

The respondent emphasizes the mitigating factors without acknowledging the aggravating factors. The presence of mitigating factors has not historically prevented this court from imposing discipline in the form of suspension. See, *e.g.*, *In re Harrington*, 296 Kan. 380, 293 P.3d 686 (2013) (panel is not required to address every mitigating factor; 2-year suspension); *In re Meek*, 295 Kan. 1160, 289 P.3d 95 (2012) (40-month suspension); *In re Depew*, 290 Kan. 1057, 237 P.3d 24 (2010) (1-year suspension). Furthermore, suspension is appropriate when a lawyer knows that he or she is not performing the services requested by the client but does nothing to remedy the situation. See, *e.g.*, *In re Batt*, 296 Kan. 395, 404, 294 P.3d 241 (2013); ABA Standard 4.42.

The respondent also argues that he has corrected the problems in his practice and his circumstances have changed, which ensure that he will not commit similar transgressions in the future. Regardless of what the respondent's current situation might be, based on the fact that the respondent neglected to even take minuscule measures to protect D.H.'s rights (*e.g.*, calling her on the phone and recommending that she retain a new attorney) and instead chose to ignore her case while addressing his own financial and personal issues, we conclude that a 6-month suspension is an appropriate sanction for the respondent's misconduct. A minority of the court, however, would impose a shorter term of suspension.

Finally, the respondent contends that the recommended reinstatement requirements of a psychological examination and demonstrated recovery from depression are not warranted because the record does not support a finding that he is still experiencing depression. We agree. The evidence presented at the hearing established that due to a myriad of financial and personal issues that arose during the respondent's representation of D.H., the respondent suffered from depression-like symptoms, resulting in his knowingly engaging in conduct that caused damage to D.H. But there was no evidence presented that would indicate the respondent suffered from depression before his financial and personal issues arose or that he continued to suffer from depression once

those issues were resolved. Accordingly, we conclude that the facts of this case do not warrant requiring the respondent to undergo a psychological evaluation or a hearing pursuant to Supreme Court Rule 219(d) prior to reinstatement.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Brendon P. Barker be suspended from the practice of law in the State of Kansas for a period of 6 months, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2013 Kan. Ct. R. Annot. 300).

IT IS FURTHER ORDERED that Barker shall comply with Supreme Court Rule 218 (2013 Kan. Ct. R. Annot. 406), and in the event respondent seeks reinstatement, he shall comply with Supreme Court Rule 219. Within the required petition for reinstatement, the respondent must show he has fully paid or entered into a written plan to fully pay D.H. for her expenses associated with his misconduct, which total $21,351.55.

IT IS THEREFORE ORDERED that the costs of these proceedings are assessed to Barker and that this opinion be published in the official Kansas Reports.

LUCKERT, J., not participating.

MARTIN J. ASHER, District Judge, assigned.